In re Melvin Beecher CUMMINS and Louise Olivia Cummins, Debtors.

James A. FRANKFURTH dba the Wizard Group, Plaintiffs-Appellants,

v.

Melvin Beecher CUMMINS and Louise Olivia Cummins, Defendants-Appellees.

BAP No. CC–81–1038–VGH.

Bankruptcy No. SA 80–01682 PE.

Adv. No. SA 80–0860.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Sept. 16, 1981.

Decided Dec. 11, 1981.

**894**

Lisa Keehan Hughes, Hughes & Associates, Fullerton, Cal., for plaintiffs-appellants.

Ralph G. Pagter, Santa Ana, Cal., for defendants-appellees.

Before VOLINN, GEORGE and HUGHES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

### I.

The appellant, James A. Frankfurth, is a licensed real estate broker. The appellee, Melvin B. Cummins, is a real estate developer who filed a Chapter 11 proceeding on July 1, 1980. Cummins, as debtor-in-possession, executed, in September, 1980, written exclusive listing agreements with respect to two parcels of real estate, debtor's principal assets, which provided that if the properties were sold by anyone during the exclusive period, the appellant would be entitled to a commission of 6% of the sale price. These agreements contained the language "subject to court approval". Pursuant to this provision a motion for approval of the agreements was prepared and signed by the debtor's attorney for presentation to the court. The record is not clear, but it appears that, while the motion may have found its way to the courthouse and the office of the United States Trustee, no order thereon was presented to the court for entry. There is nothing in the record to suggest that the order would not have been entered had it been presented to the court by the debtor's attorney. There is no evidence that the debtor advised or expected appellant to present the application or order to the court.

Appellant produced and presented written offers of purchase which were not accepted by debtor. During the exclusive listing period, however, appellee considered other offers and prior to the expiration of the listing period, sold the property to parties other than those produced by appellant. The court approved the sale.

### II.

The broker-appellant, seeking to enforce the exclusive listing agreement, filed a claim and applied to the court for a real estate commission of $66,000, based upon the 6% commission provided for in the listing agreement, the sales having presumably amounted to some $1,100,000.

The debtor resisted allowance of the commissions on the grounds that appellant had not produced the buyer of the property and, being a professional person, had not complied with 11 U.S.C. § 327(b) which requires that the court approve employment of such persons.

The court below 8 B.R. 701 (Bkrtcy.C.D. Cal.) disallowed the commissions. In so holding, it stated:

"I will assume for the sake of this ruling that plaintiff had a valid, exclusive listing on the subject real property and that he spent his own funds in exposing the property for sale and that he actually showed the property to numerous prospects; in fact he produced a buyer at one point in the case. I will assume the fact to be that the debtor in possession, in good faith, believed that he had the permission of the court to list the property for sale when he was given permission to list it by an employee of the U.S. Trustee's office."

The court indicated that had the appellant produced the actual purchaser, there might have been some basis for equitable relief in the form of a *nunc pro tunc* order approving the broker's employment. The court held, however, that since the broker's efforts had produced no benefit for the estate, such relief was not warranted and dismissed appellant's claim on February 11, 1981.

### III.

Certain events occurred after the commencement of this appeal which substantially affect our consideration of the trial court's decision. While the appeal was pending, the debtor-in-possession filed an application with the Bankruptcy Court seeking dismissal of the Chapter 11 case. Pursuant thereto the court dismissed the Chapter 11 case on July 10, 1981, retaining jurisdiction over certain outstanding claims, including that of appellant. The court made the order effective on July 20, 1981, so that appellant would have time to apply to the Bankruptcy Appellate Panel for a "writ of attachment".

On July 17, 1981, appellant filed an Emergency Motion for Order of Stay of Distribution of $66,000 to debtors with this Panel, contending that once the case was dismissed, the funds of the debtor, including those derived from the sale of real estate, would no longer be subject to the court's jurisdiction, with consequent uncertainty of recovery in the event of a successful appeal. The Panel entered an order granting a stay pending appeal, provided that the appellant furnish a $7,500 bond. The bond was not furnished and the stay thereby became ineffective.

### IV.

As previously indicated, we are of the view that events which occurred subsequent to the appeal substantially affect the issues presently before us. It should be noted that these events or facts were presented to the court below since it gave consideration to appellee's application for dismissal of the bankruptcy case and appellant's ensuing motion for retention of funds to insure recovery on his claim. While there was no articulation of the issue hereinafter discussed, that issue was implicit in what would become the legal relationships of the various parties in the event of dismissal. We believe, given these circumstances, that some definition of the issues now presented to this court would better serve the interests of judicial economy and the parties than would remand for the purpose of consideration of the matter in the light of post-appeal change of circumstances on a general basis.

### V.

The basic fact, presently, is that the debtor chose to dismiss the case and deal with his financial affairs and creditors as if bankruptcy had not occurred except for certain reservations which are not germane here. Under these circumstances, the relationship of appellant and appellee warrants specific examination.

The court below considered the issue as to whether or not a real estate broker was a professional person, thereby bringing about the need for an order approving his employment pursuant to 11 U.S.C. § 327(b). Having answered this issue in the affirmative, the court then considered whether a *nunc pro tunc* order approving the employment would be warranted. While both these issues were appropriately before the court, and brought before us on appeal, we are of the view that they have been rendered moot by subsequent events which have

brought about a situation requiring remand.[1]

## CONCLUSION

 The reason for the rules relating to retention of professional personnel and the setting of their fees is to protect the estate and its creditors from unwarranted and gratuitous claims. However, debtor, as a debtor-in-possession, or a trustee, subject to the supervision and authority of the Bankruptcy Court in order to protect the estate and its creditors, no longer exists. There is no estate. The matter is now one which should be looked at and treated in the light of what the rights of the parties would have been if bankruptcy had not occurred. Under these circumstances, the policy considerations of 11 U.S.C. § 327(b) are inapplicable. Without bankruptcy, it is clear that the contract could be enforceable and the commission payable to the broker.

 The principle of enforcing compliance with a rule of general application, without exception, even as to innocently non-complying persons, should be applied with perception as to whether circumstances warrant such strict enforcement. In the context of this case, the threshold criterion of protection of an estate and its creditors is absent.

The realities which would attend affirmance, at this time, of the judgment below would be, first, to sanction the conduct of the debtor in not complying with his commitment to obtain court approval of the listing agreement and, second, to approve breach of his agreement to pay a commission, all to no one's benefit but his own.

We REVERSE and REMAND for disposition by the court consistent with the views herein expressed.

---

1. Definition of a "professional person" is rendered troublesome by the specific designation in 11 U.S.C. § 327(a) of disparate occupations, e.g., attorney and auctioneer. A recent case which held that marine engineers were not professionals, employed a functional approach, defining professionals as "persons . . . in professions intimately involved in the administration of the debtor's estate", *In the Matter of Seatrain Lines, Inc.*, 13 B.R. 980, 4 C.B.C. 1558 (Bkrtcy.S.D.N.Y.,1981).