**In re BSJ TOWER ASSOCIATES, Debtor.**

**Bankruptcy No. B–81–00360–A.**

United States Bankruptcy Court,
D. Puerto Rico.

April 13, 1983.

Charles Cuprill Hernández, Ponce, P.R., for debtor.

David Freedman from O'Neill & Borges, Hato Rey, P.R., for GEPT.

## OPINION AND ORDER

ANTONIO I. HERNANDEZ–RODRI-GUEZ, Bankruptcy Judge.

On January 3, 1983, debtor-in-possession filed an application for appointment of appraiser *nunc pro tunc* and for approval of compensation. In said application debtor requests that we enter a *nunc pro tunc* order authorizing the appointment of Robert F. McCloskey as appraiser for BSJ Towers Inc., as of the date his services were rendered. Debtor also requests the *nunc pro tunc* approval by the court of disbursements by BSJ to Mr. McCloskey totalling the sum of $18,300.00. Said application has been opposed by General Electric Pension Trust ("GEPT"). Both parties have fully briefed the issue and the matter stands presently submitted for our consideration.

The parties agree on the factual background of this controversy: the appointment of the appraiser and the rendering of his services to debtor have already been performed. Mr. McCloskey was paid $18,-300.00 for said services. The appointment of the appraiser, the rendering of his services and the actual compensation for services rendered was performed without this court's prior approval.

We thus address the specific issue facing us, to wit, whether to give retroactive validity to debtor's acts by issuing a *nunc pro tunc* order appointing Mr. McCloskey as appraiser as of the date when his services were first rendered and approving the compensation subsequently paid by debtor for such services.

*Analysis*

■ There should be no doubt that the equity powers vested in this court include the authority to issue a *nunc pro tunc* order such as the one sought in this case. *In re Hite* 2 F.Supp. 536 (W.D.Pa.1932). Thus, the scope of our present analysis is properly whether we should, in the exercise of our equitable discretion, issue said order.

The applicable law in regard to the appointment of professional persons to render services for the trustee or debtor is contained in section 327(a) of the Bankruptcy Code.:

"(a) Except as otherwise provided in this section, the trustee, *with the court's approval,* may employ one or more attorneys, accountants, appraiser, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." (Emphasis added).

11 U.S.C. section 327(a).

Rule 606 of the Bankruptcy Rules, dealing with the appraisal of property and the compensation and eligibility of appraisers, should also be taken into consideration. Such rule was applicable to Chapter X and Chapter XI proceedings under Rules 10–607 and 11–54 respectively, and at present should be interpreted together with section 327(a) of the Bankruptcy Code. Rule 606 provides in its pertinent parts:

"(a) Appraiser: Appointment and Duties. The Court shall appoint one or more competent and disinterested appraisers, unless it determines that such appointment is unnecessary. Unless the court directs otherwise, the appraiser or appraisers shall appraise all the property of the estate and shall prepare and file a report of the appraisal with the court..."

"(c) Compensation and Eligibility of Auctioneers and Appraisers. *No auctioneers shall be employed or appraiser appointed except upon an order of the court fixing the amount or rate of compensation."* (Emphasis added).

Bankruptcy Rule 606 is still applicable under the Bankruptcy Code, except that under section 327(a) of the Code, the Court now *approves* rather than *appoint* the appraiser to be employed by the trustee. See *Collier,* 1981 Pamphlet Edition, Part 2, p. 176.

Also applicable is Rule 2006 of the Interim Bankruptcy Rules, which provides:

"An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to Rule 327 or Rule 1103 of the Bankruptcy Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for such employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and to the best of the applicant's knowledge all of such person's connections with the debtor, the creditors, or any other party in interest, and their respective attorneys and accountants."

■ The statutory and regulatory scheme sketched above indicate, without doubt, that *nunc pro tunc* orders of appointment and compensation of appraisers are not to be favored. The rule is quite clear: before any services to a trustee or debtor-in-possession are rendered by a person, such services must be authorized by the court. *In re Garland Corp.* 8 B.R. 826, 828 (Bkrtcy. D.Mass.1981).

It is the "longstanding rule" that professional services performed for the estate or the debtor-in-possession may only be compensated by the estate if such services were authorized by the court prior to being rendered. See Collier, *op. cit; In re Morton Shoe Companies, Inc.,* 22 B.R. 449, 450–51 (Bkrtcy.D.Mass.1982) (financial expert unauthorized by Court to render services to debtor denied compensation); *In re W.F. D.R., Inc.,* 22 B.R. 266 (Bkrtcy.N.D.Ga.1982) (unauthorized management consultant denied compensation); *In re Hydrocarbon Chemicals, Inc.,* 411 F.2d 203 (3rd Cir.1969) (Counsel employed without authorization by debtor's counsel denied compensation); *In*

the Matter of Hucknall Agency, Inc., 1 B.R. 125 (Bkrtcy.W.D.N.Y.1979) (accountant ordered to return to estate unauthorized payments); *In re Mork*, 19 B.R. 947, 948–49 (Bkrtcy.Minn.1982) (accountants denied compensation for work not authorized by Court); *In re Johnson*, 21 B.R. 217 (Bkrtcy. D.C.1982) .(attorneys denied compensation for work not authorized by Court); *In re René Press, Inc.*, 23 B.R. 381 (Bkrtcy.Mass. 1982) (accountant denied compensation for services rendered without the authorization of the Court and *ordered to return the sum of $4,400.00 already disbursed by the estate* ).

■ Notwithstanding the above debtor insists that a *nunc pro tunc* order is proper in this case and cites several cases in support of this proposition. Without citing said cases *in extenso* we think that a reasonable formulation of the rule contained in said case law is that a *nunc pro tunc* order of appointment and compensation of a professional person who has rendered services to a trustee or debtor in possession may be issued in cases showing extraordinary circumstances.

Does this case present us with such "extraordinary circumstances" as to move us to exercise our equity powers? We think not.

*In re Hite*, 2 F.Supp. 536 (W.D.Pa.1932), the receiver appointed by the Court had filed a petition requesting the appointment of an attorney, pursuant to General Order 44 (then 11 U.S.C.A. sec. 53). The appointment was properly made by the Court. Subsequently, the receiver was elected trustee but by inadvertence failed to formally request to the court the appointment of counsel. The same attorney continued to render services for the trustee. It is significant to note the reasoning of the Court in allowing compensation to the attorney:

"Although we are in accord with the general reasoning of the referee in his opinion, wherein he explains his reason for refusing the *nunc pro tunc* order and allowance of compensation, we are of the opinion that his order in the instant matter is not demanded by General Order 44. It is the undoubted intent of that order

that before an attorney can be appointed a proper showing must be made as to the necessity of the appointment, and the absence of disqualifying interests in the person suggested for appointment. *Had the Court not passed upon the necessity of counsel and the qualifications of the attorney proposed,* by order approving appointment of the attorney for the receiver, *we should feel compelled to agree with the position of the referee in holding that a nunc pro tunc order would not be permissible.* But the petition and affidavit contemplated by the General Order having been made, and the necessity of counsel and the qualifications of the attorney suggested having been determined by the Court, we feel that the essential requirements of the General Order have been met." (Emphasis added).

The facts recited above are very different from those in the instant case, where Debtor appointed, without the Court's approval, Mr. Robert McCloskey as BSJ's appraiser and disbursed, with no previous authorization, sums totalling $18,300.00.

A similar situation to that in *In re Hite, supra,* existed in the case of *In the Matter of Womack, Inc.*, 1 B.R. 95 (Bkrtcy.D.Nev. 1979). There, unlike the present case, the Court held that while no "formal" order authorized a broker to render services to the estate, the applicant broker had always acted *under the Court's constant direction and jurisdiction.*

*In Re Barry Yao Co.*, 172 F.Supp. 375 (S.D.Cal.1959), cited by debtor, is contrary to said party's contention. In that case an attorney had rendered services both on behalf of certain creditors and on behalf of the trustee. The referee had not authorized the attorney to act on behalf of the trustee. The Court held:

"It is settled that an attorney for creditors, who undertakes to act also as attorney for a receiver or trustee, *must first obtain approval of the Referee* in compliance with General Order 44 (11 U.S.C.A. following section 53) and, *in the absence of such approval, no compensation is allowable,* however valuable and beneficial

to the bankrupt estate that attorney's services have been." (Emphasis added).

The attorney was allowed certain compensation for services he had rendered *on behalf of the creditors.* Such dual function by a professional is today forbidden by section 327(a) of the Bankruptcy Code.

Debtor strongly relies in *In Re King Electric Co. Inc.,* 19 B.R. 660, 662–63 (E.D.Va. 1982) in support of its request for a *nunc pro tunc* order. However, the factual situation in *King* differs from the one at bar.

■ *King Electric, Inc.* filed a petition in the Bankruptcy Court under Chapter 11 on April 22, 1981. *The petition stated that the firm of Marks, Stokes & Harrison would act as counsel for the debtor-in-possession.* However, *counsel for debtor failed to formally request the Court's approval for employment until November of 1981.* Thus from the outset of the bankruptcy proceedings, the Court, the creditors and the Creditor's Committee did know about the employment of counsel by the debtor.

In the instant case, debtor requested an appraisal from Mr. McCloskey on March 16, 1981. (Exhibit B–1 of *Application for Appointment...*, filed on January 3, 1983). No motion or notice requesting the approval of Mr. McCloskey as appraiser was filed. The parties do not controvert the fact that Mr. McCloskey has been paid the sum of $18,300.00 prior to any form of application or request for authorization from this court.

Debtor's application fails to show that, in any event, the services rendered were beneficial to the estate since the appraiser report was necessary in order to prepare its counterclaim and affirmative defenses in adversary Proceeding No. 81–0195. Up to this moment, Mr. McCloskey has not been presented to the Court either in the instant case or in the above mentioned adversary proceeding. Such being the case we can not divine the nature and results of Mr. McCloskey's services.

BSJ claims that the Court was aware of the work performed by Mr. McCloskey, "inasmuch it was submitted for an *in chambers* examination during the hearing of GEPT's application for adequate protection." (See the answer to opposition to application of January 20, at page 2). It should be noted that the issue of adequate protection was discussed before this Court on/or around December of 1982, long after the unauthorized services had been performed by Mr. McCloskey and disbursed by BSJ. An *in chambers* examination of said report, more than a year after the services were requested and rendered does not magically cure the original defect of having failed to apply to the Court for authorization to obtain and compensate an appraiser.

Debtor alleges that the summary nature of adversary proceeding 81–0195 compelled him to act without prior application to the court. The record reveals that on the date when Mr. McCloskey was requested to appraise debtor's property, March 16, 1981, the adversary proceeding had not yet been filed. Adversary proceeding 81–0195 (originally labeled "81–Adv. –6051") was instituted on April 14, 1981, when the complaint therein was filed by GEPT against BSJ Towers Associates in the Bankruptcy Court for the Southern District of New York. We thus fail to see how debtor was compelled by the lack of time.

There is no reason whatsoever why debtor could not have obtained the court's approval prior to hiring Mr. McCloskey. If an emergency existed then debtor should have requested said remedy on an emergency basis.

Finally, the argument of equity in debtor's application moves us no further. It is stated that the retroactive appointment of the appraiser will result in avoiding the resulting inequity to Mr. McCloskey. However, different from the cases cited by debtor, in this case the inequity is debtor's *own* doing:

"The only argument in favor of a *nunc pro tunc* order is that of hardship. But the hardship is the appellants' own making. The rule is clear, and they are charged with knowledge of it. *To give heed to the argument of hardship in such circumstances would nullify the require-*

ment that the affidavit be filed before the appointment is made..."

*In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988 (2d Cir.1931). See also *In Re Schatz Federal Bearings Co. Inc.,* 17 B.R. 780, 6 C.B.C. 66 (S.D.N.Y.1982).

*Conclusion*

The application for the appointment *nunc pro tunc* of Robert McCloskey as appraiser for BSJ and for retroactive approval of compensation is hereby DENIED. A hearing shall be held on May 17, 1983 at 10:00 A.M. to consider how and who shall reimburse the amounts improvidently paid by debtor in compensation for the appraiser's services.

SO ORDERED.