In re CAROLINA SALES CORPORA-
TION, ID Number: 56–0166070,
Debtor.

Bankruptcy No. S–82–01564–4.

United States Bankruptcy Court,
E.D. North Carolina.

Jan. 18, 1985.

See also, Bkrtcy., 43 B.R. 596.

Walter L. Hinson, Wilson, N.C., Trustee.

Mark C. Kirby, Raleigh, N.C., for Strategic Options.

## MEMORANDUM OPINION AND ORDER ALLOWING OBJECTION TO CLAIMS OF STRATEGIC OPTIONS, INC.

A. THOMAS SMALL, Bankruptcy Judge.

This matter is before the court to consider the trustee's objection to claim # 135 (and duplicate claim # 206, hereinafter "claim") filed by Strategic Options, Inc. on December 17, 1982. Strategic Options' claim is for 11 U.S.C. § 503(b)(2) administrative expenses in the amount of $6,317.81 as compensation and reimbursement of expenses for professional management consulting services provided to Carolina Sales Corporation as debtor-in-possession.

### FACTS

The trustee, the debtor, and Strategic Options, Inc. filed Stipulations of Fact on November 20, 1984 which the court considered along with briefs and affidavits, in determining whether Strategic Options' priority claim should be allowed.

The debtor filed a voluntary chapter 11 petition on August 15, 1982. Prior to the

filing, Strategic Options, a North Carolina corporation, provided professional consulting services to Carolina Sales Corporation at the rate of $65.00 per man hour or $500.00 per man day, the same rate of compensation requested in Strategic Options' priority claim.

Strategic Options markets itself as a professional organization providing a vast array of business support services including financial planning, strategic planning, organizational development, administrative advice, engineering, and marketing. All of these services are provided by a "unique combination of experienced professionals." (See generally, resumés attached to Strategic Options' September 4, 1984 Petition for Overruling of Trustee's Objections). Strategic Options' September 4, 1984 Petition admits that the "petitioner enter[ed] into a contract to supply certain *professional* (emphasis added) strategic, marketing, negotiating and search consulting services" to the debtor. (Petition at 1). In the November 20, 1984 Stipulations of Fact, Strategic Options stipulated that, at all pertinent times, it was "engaged in the business of rendering management level *professional* (emphasis added) consulting services." (Stipulations at 1).

Without obtaining prior approval of the court, the debtor-in-possession retained Strategic Options, and Strategic Options agreed to continue to provide professional services to the debtor on August 16, 1982, one day after entry of an order for relief in the case. Strategic Options was unaware of the 11 U.S.C. § 327(a) requirement that professional persons may only be employed with court approval.

The consulting services were performed by Strategic Options in a timely and competent manner and included consultation and negotiation with the officers and management level personnel of the debtor, and debtor's chapter 11 counsel and potential franchisors, and three appearances before this court during which Strategic Options' president qualified as an expert witness.

The parties stipulated that the services were "reasonably necessary in the administration" of the debtor's estate and assisted the debtor in performing its chapter 11 duties. It is further stipulated that the compensation sought is reasonable in light of the services performed.

The parties also stipulated that the services were performed "with the knowledge and consent of the Debtor, the Debtor's Chapter 11 Counsel and the Court." This case was assigned to Bankruptcy Judge Thomas M. Moore during the time Strategic Options' services were rendered. The court entered an order appointing a trustee on November 30, 1982. Shortly thereafter, the trustee received a telephonic status report and assessment of the likelihood of successful reorganization from Strategic Options and advised Strategic Options to stop providing services to the debtor. The trustee later proposed a plan of liquidation which was confirmed on June 13, 1984.

## DISCUSSION AND CONCLUSIONS

The basis of the trustee's objection to allowance of Strategic Options' claim is that no party ever sought or received an order from the court approving the debtor's employment of Strategic Options, a professional person, as required by 11 U.S.C. § 327. The trustee asserts that such failure is fatal to Strategic Options' claim for compensation and expenses made under 11 U.S.C. § 503(b)(2).

Administrative expenses, given first priority status under 11 U.S.C. § 507(a)(1), include compensation and reimbursement awarded under 11 U.S.C. § 330(a). 11 U.S.C. § 503(b)(2). Section 330(a)(1) and (2) allows payment of reasonable compensation and reimbursement of actual, necessary expenses to "a professional person employed under section 327" of title 11. If a professional's employment is not accomplished pursuant to the requirements of 11 U.S.C. § 327 and Bankruptcy Rule 2014, there is no right to compensation or reimbursement of expenses.

11 U.S.C. § 327(a) provides that a trustee (or debtor-in-possession pursuant to 11 U.S.C. § 1107):

... with the court's approval, may employ one or more ... professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Bankruptcy Rule 2014(a) provides:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

The language of section 327 and Bankruptcy Rule 2014 make it abundantly clear that only those professionals whose employment is authorized by the court may be compensated under 11 U.S.C. § 330. 2 *Collier on Bankruptcy* ¶ 330.04[2], at 330–13 (15th ed. 1984). Otherwise, the person rendering services may be an officious intermeddler or a gratuitous volunteer. 2 *Collier,* supra. ¶ 327.02, at 327–6. *See, e.g., In re Morton Shoe Companies, Inc.,* 22 B.R. 449, 450–51 (Bankr.D. MA 1982).

Strategic Options argues that its claim for compensation for postpetition management level consulting services should be allowed and accorded administrative priority treatment, notwithstanding the lack of prior approval, for any one of three reasons: (1) that Strategic Options did not act in the capacity of a "professional person" within the meaning of 11 U.S.C. § 327(a), rendering court approval of employment unnecessary; or, if the court determines that Strategic Options did act in a "professional" capacity, (2) that Strategic Options was employed by the debtor on salary within the meaning of 11 U.S.C. § 327(b); or,

(3) that entry of an order *nunc pro tunc* approving Strategic Options' employment from the date of the debtor's chapter 11 filing would be appropriate given the facts of this case.

Strategic Options first argues that it is not a professional person within the meaning of 11 U.S.C. § 327, and therefore, court approval of its employment by the debtor is not necessary. We disagree and conclude that Strategic Options is a professional person within the meaning of 11 U.S.C. § 327.

Strategic Options is clearly within the definition of "person" found in 11 U.S.C. § 101(30), but since the term "professional" is nowhere defined in the Code, the court must consider various nonstatutory indicia in determining whether Strategic Options is a "professional person" within the meaning of section 327.

Strategic Options markets itself as a professional organization providing a vast array of business support services provided by a "unique combination of experienced professionals." Strategic Options itself referred to the services it contracted to render as professional services in its September 4, 1984 Petition and stipulated that at all pertinent times, it was "engaged in the business of rendering management level professional consulting services." The individuals who work for Strategic Options hold themselves out to the public as being specially trained and uniquely qualified (by both education and experience) to supply the type of superior quality consulting services provided by professionals. The conclusion that Strategic Options is a professional person within the meaning of 11 U.S.C. § 327 is further supported by the fact that Strategic Options' charged $65.00 per man hour or $500 per man day for their services, a professional rate of compensation.

Strategic Options contends that "professional person" is limited to persons involved in the administration of the estate and does not include those who only assist in the mechanics of the business. *In re*

*Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr.S. D.N.Y.1981) and *United States ex rel. Kraft v. Aetna Casualty & Surety Co.*, 43 B.R. 119, 12 BCD 510 (D.C.M.D.TN 1984). Even if "professional person" is so limited, which we need not determine, Strategic Options is still a "professional person" by virtue of the stipulated fact that the services were "reasonably necessary in the administration of the debtor's estate."

To avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered chapter 11 debtors, the court should carefully scrutinize applications for employment *before* the trustee or debtor contracts for such services. To hold otherwise could be to invite officious intermeddlers and additional unwarranted and unnecessary financial burdens to an already troubled estate, to the detriment of other creditors and to the benefit of none except those employed by the debtor.

■ Strategic Options next argues, since the court finds that it is a professional person, that it was regularly employed by the debtor on salary, and that its services were necessary in the operation of the debtor's business, thereby rendering court approval of its employment unnecessary under 11 U.S.C. § 327(b). Section 327(b) provides:

> If the trustee is authorized to operate the business of the debtor under section 721 or 1108 of this title, and if the debtor has regularly employed attorneys, accountants or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

Strategic Options was never a regularly employed professional person on salary within the meaning of 11 U.S.C. § 327(b). By referring to a regularly employed professional person on salary, the Bankruptcy Code envisions an existing department within a company or in-house counsel, employed on salary, who will be helpful to the trustee in handling routine matters incident to normal business activity. 2 *Collier on*

*Bankruptcy* § 327.04, at note 2 (15th ed. 1984). At all times, Strategic Options operated as an independent contractor in its relationship with the debtor, not as a salaried employee.

■ Finally, Strategic Options asserts that the court should enter a *nunc pro tunc* order approving its postpetition employment by the debtor, rectifying a previous failure to obtain pre-employment court approval required by 11 U.S.C. § 327(a).

A bankruptcy court does have the discretion within its equity powers to enter *nunc pro tunc* orders such as the one sought in this case. *In re BSJ Tower Associates*, 35 B.R. 131 (Bankr.D. PR 1983); *In the Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983). The statutory language of 11 U.S.C. § 327(a) requiring court approval *before* employment, however, is clear, and strong reasons exist for not circumventing the rule's requirement and for not exercising this discretion. *Triangle*, 697 F.2d at 1284; *BSJ*, 35 B.R. at 132. Such an order should be entered only in the most extraordinary circumstances. *Triangle*, 697 F.2d at 1282; *In re Johnson*, 21 B.R. 217 (Bankr.D.D.C.1982). To hold otherwise would nullify the requirement that approval be given before the professional is hired. *Triangle*, 697 F.2d at 1282; *BSJ*, 35 B.R. at 134.

Some bankruptcy courts have held that the 11 U.S.C. § 327(a) prior approval standard must be rigidly adhered to. *Matter of Hucknall Agency, Inc.*, 1 B.R. 125 (Bankr. W.D.N.Y.1979). These courts state that the purpose of a *nunc pro tunc* order is to record a prior but unrecorded act of the court, one unrecorded due to inadvertence or mistake. The function of a *nunc pro tunc* order is not, by a fiction, to antedate the actual performance of an act which never occurred, but is to make the record conform to that which was actually done at the time it was done. *In re Call*, 36 B.R. 374 (Bankr.S.D. OH 1984); *In re Mork*, 19 B.R. 947, 949 (Bankr.D. MN 1982). These courts hold that this is true no matter how harsh the result. *In re Johnson*, 21 B.R.

217, 218 (Bankr.D.D.C.1982); *In re WFDR, Inc.*, 22 B.R. 266 (Bankr.N.D. GA 1982). The court, in *Johnson*, however, did recognize that, despite strict adherence to the prior approval requirement, entry of an order *nunc pro tunc* might be warranted in extraordinary circumstances.

*Nunc pro tunc* orders have been entered in some cases where the courts have found extraordinary circumstances. In *Triangle Chemicals*, cited by Strategic Options in its Brief in Support of Priority Administrative Claim, the court, vacating a prior bankruptcy court order and remanding the case to the bankruptcy court to use its discretion in deciding whether to enter a *nunc pro tunc* order, cited the exceptional circumstance that the attorney requesting the order "had performed services that had preserved at least some five to six hundred thousand dollars for the estate of the debtor. (Triangle then had assets of $1,100,000 and liabilities of $1,800,000.)" *Triangle*, 697 F.2d at 1282. There is nothing before the court to indicate that the contributions of Strategic Options were of a similar magnitude.

Extraordinary circumstances also warranted entry of an order approving employment *nunc pro tunc* in the case *Matter of Allen*, 8 B.R. 221 (Bankr.N.D. GA 1981). There, the trustee in a converted chapter 7 case applied to have himself appointed as attorney for the trustee, *nunc pro tunc*. The court cited as its reason for granting the request the fact that the trustee performed "valuable legal services that benefited the creditors of [the] estate so that what appeared to be a no-asset chapter 7 [was] converted to a chapter 13 plan which contemplate[d] a 100% payout to unsecured creditors." *Allen*, 8 B.R. at 221. Again, there is nothing before the court indicating that Strategic Options' assistance resulted in such an extraordinary benefit to creditors.

Strategic Options also cites *In re King Electric Company, Inc.*, 19 B.R. 660 (D.C. E.D. VA 1982), in support of its argument for *nunc pro tunc* approval. In *King*, however, approval was sought for *nunc pro tunc* employment of an attorney for the debtor-in-possession, not a professional consultant. The bankruptcy court had ordered the debtor's attorney to attend various hearings, meetings and conferences, and the debtor's attorney expended substantial *court ordered* effort on behalf of the debtor-in-possession. From the day the debtor's petition was filed, all parties to the proceeding, including the bankruptcy court considered counsel to in fact be counsel for the debtor. The bankruptcy court declined to enter the approval *nunc pro tunc*, but the district court, on appeal, concluded that, considering the facts of the case, equity required entry of an order *nunc pro tunc* appointing counsel as counsel for the debtor. The attorney for the debtor in *King*, recognized by all as such, was necessary to the debtor's chances for success in chapter 11. An attorney is necessary in almost every chapter 11 case to guide the debtor through the labyrinth of chapter 11 proceedings, often bewildering to debtors not trained in the intricacies of bankruptcy law. Although the parties stipulated that Strategic Options' services were "reasonably necessary" in the administration of the estate, these services are not of the same character as those provided by counsel in a chapter 11 case. While the services of an attorney are required in almost every chapter 11 case, the services of a consultant are not. The court must make the initial determination of the propriety of hiring consultants to assure that the costs of such services will not outweigh the benefits, and to insure that the door is not opened to costly problems invited by the terrific opportunity for abuses which would exist if the debtor-in-possession were allowed to hire his own selected staff of consultants without the independent, detached assessment of the court.

Strategic Options contends that the extraordinary circumstances which warrant entry of a *nunc pro tunc* order on its behalf are: (1) its own ignorance of the requirement that the court preapprove its employment, (2) that its president testified before the court on several occasions regarding, among other things, the services it rendered to the debtor, and (3) that it

was never advised by the debtor, the debtor's counsel, or the court that it was necessary to obtain a court order approving its employment.

Strategic Options' ignorance of the requirements of the Bankruptcy Code is not sufficient reason to excuse its failure to obtain a prior order. The fact that it knew it was dealing with a chapter 11 debtor placed Strategic Options on notice that its rights and duties in relation to its business relationship with Carolina Sales would be altered. However harsh the consequences, Strategic Options is charged with knowledge of the prior approval requirement. *BSJ*, 35 B.R. 131, at 134. It is also clear that the court's knowledge that the claimant may have performed some post-petition services for the debtor "does not magically cure the original defect of [the debtor] having failed to apply to the [c]ourt for authorization to obtain and compensate [a professional person]." *BSJ*, 35 B.R., at 134. Any oversight of the debtor's counsel in failing to obtain such approval is not a sufficient extraordinary circumstance to warrant entry of a *nunc pro tunc* order.

The purpose of the requirements of 11 U.S.C. § 327(a) is to permit *prior, independent* judicial oversight into both the necessity and the legality of the terms of employment. *In re American Trawler Corp.*, 24 B.R. 505, 506 (Bankr.D. ME 1982); *In re Mork*, 19 B.R. 947, 948–949 (Bankr.D. MN 1982). This approval process is an exception to the Bankruptcy Code's goal of removing bankruptcy judges from case administration, and the process is necessary to curb abuses of the system.

The result in this case may be harsh, but the requirements for preapproval were not met, and accordingly,

IT IS HEREBY ORDERED that the trustee's objection to Strategic Options' claim for $6,317.81 is ALLOWED; and

IT IS FURTHER ORDERED that Strategic Options' 11 U.S.C. § 503(b)(2) claim for priority payment of $6,317.81, as compensation for professional consulting services and reimbursement of expenses, is DENIED.