**In re LAGUNA HILLS FINANCIAL ASSOCIATES, Debtor.**

**Bankruptcy No. 86–00330 JB.**

United States Bankruptcy Court, C.D. California.

Nov. 18, 1988.

Daniel J. McCarthy, Hill, Farrer & Burrill, Los Angeles, Cal., for IBEW–NECA Pension Plan.

Marc Winthrop, Lobel, Winthrop & Broker, Irvine, Cal., for debtor.

Leo Sullivan, Sullivan, Cummings, Wertz, McDade, Roberts & Wallace, San Diego, Cal., for Ronald M. Bonaguidi.

Virgil Roth, Bronson, Bronson & McKinnon, Los Angeles, Cal., for Grubb & Ellis.

MEMORANDUM OF DECISION RE GRUBB & ELLIS APPLICATION FOR RETROACTIVE APPROVAL OF EMPLOYMENT

JAMES N. BARR, Bankruptcy Judge.

GRUBB & ELLIS COMPANY, a real estate brokerage company, (hereinafter "the Broker") has asked me to approve its employment by the Debtor in Possession (hereinafter "Debtor"), and asks that said approval be made retroactive to May 13, 1987 i.e., the date it first dealt with the debtor with regard to the subject property described below. The application was objected to by the Trustee for the Southern California IBEW–NECA Pension Plan (hereinafter "the Plan Trustee"). The Plan Trustee held first and second trust deed liens on the Debtor's real property located at 23046 Avenida de la Carlota, Laguna Hills, California (hereinafter "the subject property") when I approved the Debtor's sale of the subject property to La Solana Corporation for $21,500,000 by order entered January 4, 1988. At close of escrow for the sale, the Plan Trustee received approximately $21,000,000 of the net sale proceeds, and by stipulation forgave the balance of its claim against the Debtor. How-ever, because the Broker raised the issue of its entitlement to fees from this bankruptcy estate prior to the close of escrow which prompted the Debtor to consider withdrawing consideration of the sale, the Debtor and the Plan Trustee entered into an agreement by which the sale would proceed but the Plan Trustee became obligated to pay the first $220,000 of any commission allowed the Broker by this court. Thus, the battle was joined, casting the Plan Trustee in the role of prime objector to the Broker's application for approval of its employment at the expense of the estate. The Debtor made a token objection to the Broker's application and the U.S. Trustee took no position in the matter.

The Plan Trustee devotes a great deal of its opposition papers to its version of the law in Ninth Circuit cases which deal with the subject of nunc pro tunc approval of employment of professionals. The Plan Trustee cites the case of *In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D. Cal.1986) for the alleged rule that a professional requesting approval of employment *nunc pro tunc* must demonstrate that it has satisfied each of nine conditions before a bankruptcy court can or should approve such employment. Although there is a statement similar to that in Judge Bufford's opinion in the *McKinney Ranch* case, I respectfully disagree with that interpretation of the law in this Circuit and I doubt Judge Bufford intended that part of his opinion to be as far reaching as it implies. Certainly, that is not the rule promulgated by the Ninth Circuit Bankruptcy Appellate Panel ("BAP") in the case of *In re Kroeger Properties and Development, Inc.*, 57 B.R. 821 (9th Cir. BAP 1986) (a case involving request for approval of the appointment of an attorney), which Judge Bufford correctly cites for the rule that, "[a] *nunc pro tunc* appointment order lies within the sound discretion of the trial court." *McKinney*, at p. 252. That latter rule was reinforced by the BAP just one month after the *Kroeger* decision was rendered, wherein the panel noted that in such situations: "The rule which must be applied therefore, is one in which the court

balances the equities and exercises its discretion." *In re Crest Mirror & Door Co., Inc.*, 57 B.R. 830, 832 (9th Cir. BAP, 1986) (another case dealing with the employment of an attorney).

In the *Crest Mirror* decision, the BAP Court cited with approval and apparently adopted the holding in the case of *In re Freehold Music Center, Inc.*, 49 B.R. 293 (Bankr.N.J.1985), in which it was said that in considering such matters,

[Courts] must weigh the good faith of the professional in proceeding without an order and take into account the response to information that the order has not been entered. [They] must further determine the emergent need for the services rendered and whether or not the Debtors could have functioned without such services. Other factors for consideration include a determination of whose responsibility it was to obtain authorization, the applicant's relationship with the Debtors and his own sophistication in the field.

*Freehold Music Center, Inc.*, at 296, Cited in *Crest Mirror*, at 833.

Those considerations then, must guide me in determining whether to retroactively approve employment of the Broker. A careful reading of the *Kroeger* and *Crest Mirror* decisions and *In re Crook*, 79 B.R. 475 (9th Cir. BAP, 1987), leads me inexorably to that conclusion. Satisfaction of the nine so called *"Twinton Properties* conditions" is not a prerequisite to trial court approval of such an application. Quite to the contrary, the BAP has consistently ruled that the trial court has "unfettered discretion" in dealing with *nunc pro tunc* employment applications of professionals. On the other side of that judicial coin is the rule that if an applicant has satisfied all nine of the "relevant considerations" discussed in *In re Twinton Properties Partnership*, 27 B.R. 817, 819–20 (Bankr.M.D. Tenn.1983), the Bankruptcy Court's disapproval of employment would likely be considered an abuse of discretion. See *Kroeger*, at p. 823.

Because of my interpretation of the aforesaid applicable Ninth Circuit opinions,

I decline to attempt to fit the facts of this matter into an inappropriate mold made of conditions and strictures which serve only those who have already benefited from the Broker's services

■ It is not seriously contended that the Broker did not earn a commission or fee of some sort in this case. In its opposition to the Broker's employment application, the Plan Trustee does not contest that the Broker procured the buyer of the subject property. The escrow instructions for the subject sale provide that the Broker is to receive a commission from the Debtor; and although I do not here pass on whether the escrow instructions consititute a contract between the Debtor and the Broker, for that question is not before me, at least the escrow instructions indicate that the Debtor and the Broker had an employment relationship (in the broad sense of that term) with regard to the sale of the subject property. The Debtor does not deny that.

In determining the good faith of the Broker in proceeding with the performance of its services to the Debtor without an order approving its employment, it is most significant to note that there was never any written "listing agreement" between the Debtor and the Broker. Rather, the "employment" of the Broker by the Debtor was evidenced most vividly by reference to the Broker in the escrow instructions and by the closing of the sale of the subject property to the buyer procured by the Broker; for the Debtor had apparently offered the subject property for sale on an "open listing" whereby no Broker was given a "listing," but any Broker who presented a buyer for the property could earn a commission if the sale were consummated as a result of that Broker's efforts. The comission was apparently negotiable. Right up to the signing of a contract for the sale of the subject property, the Broker did not know it was actually to be employed as the procuring Broker in the matter. Therefore, it would not be fair to require the Broker to seek preemployment approval. For as noted by the BAP in *In re Cummins*, 15 B.R. 893, 896 (9th Cir.BAP 1981), "The principle of enforcing compliance with

a rule of general application, without exception, even as to innocently non-complying persons, should be applied with perception as to whether circumstances warrant such strict enforcement."

■ If it is not appropriate to require the Broker to seek preemployment approval from this court, it would be illogical to hold that the Broker's present application should be denied because it acted in "bad faith" by not applying for approval of employment immediately after it was employed. Inexcuseable delay in seeking approval of employment when preemployment approval is required, may serve as a basis for denying retroactive approval of employment because the granting of such relief is essentially equitable in nature and inexcusable delay in doing that which the law requires could vitiate the applicant's entitlement to equitable relief. Here, I find the law does not require the Broker to seek preemployment court approval, therefore the Broker's delay in applying for such approval cannot be said to militate against the granting of the equitable relief sought.

So saying, I must also note that although preemployment court approval of the Broker was not required in this instance, still, 11 U.S.C. § 327 requires that the court approve the debtor's employment of all professionals. To that end, the Broker made its first application for such approval in July, 1988. That application was opposed by the Plan Trustee and because the Broker's attorney failed to attend the hearing to prosecute that application, it was dismissed and a hearing was set to determine if sanctions should be imposed in the form of attorneys fees incurred by the Plan Trustee in preparing opposition to the application. At that later hearing, I imposed sanctions on counsel for the Broker. Thereafter, on August 29, 1988, the Broker filed another application for retroactive approval of its employment which is the application upon which I now rule.

The sale of the subject property was consummated in January, 1988 and I first became aware of the Broker's employment in December, 1987 at the hearing on the Debtor's application for approval of the sale of the subject property. At that hearing, I ruled that the sale was to proceed, but that brokerage fees were not to be paid from the sale proceeds for there had been no court approval of the Broker's employment at that time.

As noted above, I find no bad faith on the part of the Broker in proceeding to work with the Debtor without first seeking this court's approval of that relationship.

Most of the other factors which the BAP suggested trial courts consider in such matters as this are not relevant considerations in this instance. However, I believe the following questions remain for my consideration in this matter: (a) Whether the Broker is qualified for employment by the Debtor, i.e., whether the Broker is professionally qualified, whether it held or represented an interest adverse to the estate in November, 1987 or thereafter, and whether the Broker is a "disinterested person" as that term is defined in 11 U.S.C. § 101(13); and, (b) whether the Debtor or others have been prejudiced by the Broker's failure to seek court approval of its employment prior to July, 1988.

■ The evidence adduced in this matter proves that the Broker is a "disinterested person" in this matter and is thus qualified for employment from that standpoint. The Broker enjoys a reputation in this community for doing competent work in brokering commercial real property such as the subject property and no one has offered proof to the contrary in this instance, so from a professional standpoint the Broker is qualified for employment.

■ As to prejudice to the Debtor or others, no evidence thereof has been offered by the parties opposing the employment application. I have no knowledge of any such prejudice whatsoever befalling any party by reason of the Broker's delay, except perhaps the Broker itself; for until its employment is approved its' fees will not be allowed or paid.

Therefore, in accordance with the findings and conclusions expressed herein, I will approve the employment of GRUBB &

ELLIS by the Debtor in possession in this case retroactive to November 3, 1987, the date escrow instructions for the sale of the subject property were signed.