PER CURIAM.
 

 Petitioners, six attorneys who performed legal services during the reorganization of the Boston & Maine (B
 
 &
 
 M) Corporation,
 
 [1]
 
 have filed a petition for writ of mandamus seeking a prompt disposition of their outstanding fee petitions. Their chief complaint is that the reorganization judge, in the District Court for the District of Massachusetts, has been dilatory in ruling on the question of their fees.
 

 Petitioners’ fee applications were filed at different times between December 1980 and June 1983. Certain of them were then approved by the ICC, and were heard by respondent in 1981 or 1982; others have yet to be referred to the ICC or scheduled for hearing. The judge has not ruled on any of them.
 

 Action on the petitions was complicated by the question of whether the trustees had ever received proper judicial authorization to hire petitioners as special counsel. Respondent, the reorganization judge, first cast doubt on the sufficiency of the trustees’ authorization in January 1982, when sua sponte he revoked Orders 65, 65-A, 65-B, and 105 entered in 1971 and 1972 by his predecessor reorganization judge. (See Appendix.) The revoked orders,
 
 inter alia,
 
 had purported to authorize the reorganization trustees to appoint and substitute special counsel to represent the debtor’s interests in tort claims, eminent domain proceedings, and “other types of court and administrative litigation.” The problem with the revoked orders was as follows: General Order 44, in effect at the time the orders had entered, as well as successor procedural provisions (see, e.g., former Bankruptcy Rule 215, Interim Bankruptcy Rule 2006, and current Bankruptcy Rule 2014) directed that the trustees seek court approval of the employment of counsel by application stating the
 
 name
 
 of the counsel to be employed, the reasons for counsel’s selection, the services to be rendered, the necessity for employing counsel, and the attorney’s connections with the debtor, creditors, or other parties in interest. Neither the revoked orders nor the applications supporting them, however, had specifically named petitioners or contained the detail required by General Order 44 and successor procedural rules. Rather, the revoked orders, apparently in an attempt to expedite the handling of the numerous
 
 [2]
 
 law
 
 *117
 
 suits in which the railroad was involved, had purported, in a more blanket form, to authorize the trustees to hire counsel.
 

 In hiring petitioners as well as other attorneys who are not parties to the present mandamus proceeding, the trustees had relied on these orders which the respondent subsequently revoked.
 
 [3]
 
 To clarify the doubt about the attorneys’ status and entitlement to compensation raised by the respondent’s January 1982 revocation order, the trustees in April 1982 filed Application for Order No. 652 asking respondent to confirm and authorize the appointment of counsel effective retroactively as of the date work had been assigned to them. Accompanying the application was a list of counsel affected and the matters on which they had worked. Application for Order No. 652 was supplemented by three more applications (numbers 658, 659, 660) addressed to the retroactive confirmation of the employment of three of the present six petitioners. A hearing was held on the latter three applications in July 1982. One of the reorganization trustees testified, describing the valuable services the three petitioners had rendered the estate, and representatives of the first mortgage trustees and second mortgage trustees endorsed the retroactive confirmation of the three petitioners’ appointments.
 

 Two months later (September 1982), respondent referred the trustees’ original application for confirmation (application for Order 652) to a master, and the master rendered his report in early January 1983. The report chronicled the services the attorneys had performed, found that the appointments had been in the best interest of the estate, and that the attorneys had not held interests adverse to the trustees or estate, and recommended retroactive confirmation of the attorneys’ appointments. As to most attorneys and as to most matters handled by those attorneys, the master found that their employment was within the scope of the revoked orders. In a limited number of matters, the master expressed the view that the matters were not within the literal scope of the revoked orders but that, in such cases, counsel had relied on the apparent authority granted by the orders to the trustee. A hearing on the master’s report was held in March 1983 at which time a copy of the Fifth Circuit’s decision,
 
 In re Triangle Chemicals, Inc.,
 
 697 F.2d 1280 (5th Cir.1983), which comprehensively treats the subject of retroactive confirmations, was given to respondent. By the end of July 1983, briefs from petitioner Moore and the trustees discussing the relevant legal issues had been filed.
 

 The issues raised by the revocation of the 1971 and 1972 orders in January 1982 concerning petitioners’ status and entitlement to compensation out of the estate remain unresolved today. We must agree with petitioners that the judge has delayed too long. As petitioners point out, the passage of time erodes the value of any fees recovered, and we see no reason why a decision could not have been rendered more seasonably. Respondent first raised the issue in January 1982. Thereafter it was explored first by a master and then in proceedings on the master’s report. By August of 1983 at latest it was plainly ripe for decision, and we would have expected a decision in the fall of 1983. Not until February 17, 1984, however, did respondent give some indication of his intentions. At this time he sent to the trustees advance copies of a memorandum which he proposed to file shortly. The memorandum concluded that the attorneys who had been retained without full compliance with General Order 44 (or successor procedural provisions), and without the court’s advance confirmation of their specific appointments, were not authorized to render services for the estate. It rejected the trustees’ view that entering orders nunc pro tunc could properly validate the appointments retroactively, concluding, instead, that the function of a nunc pro tunc order is limited to correcting the record to note that which had actually been done, but not recorded, at an earlier time.
 

 
 *118
 
 The memorandum would not entirely foreclose compensation — it indicated that some compensation might still be awarded under the application of equitable principles — but concluded that the attorneys were the real parties in interest; that “[i]f the trustees were allowed to press the compensation petitions on the basis of equitable principles, their efforts would appear incompatible with their fiduciary duty to the creditors still unpaid”; that therefore the matter should be resolved in the context of the attorneys’ applications for compensation; and that an order would be entered inviting the affected attorneys to argue equitable principles in supplementation of their applications for compensation.
 

 The trustees requested that the February 17, 1984 memorandum not be filed until they had a chance to respond. This request was granted; the trustees replied; and the memorandum has not yet been filed. Correspondence between the trustees and the reorganization judge indicated that in applying equitable principles to the attorneys’ fee applications, the judge might be considering some sort of weighing of the relative equities of the attorneys’ position against the position of unsecured creditors (who under the plan earlier approved by the judge were entitled to receive a ceiling of 10 percent of their claims).
 

 On March 13, 1984, respondent entered the order contemplated in the still unentered February 17, 1984 memorandum. The March 13, 1984 order enumerated certain matters which should be included with fee petitions and directed that any attorney whose appointment had not been specifically confirmed by court order to submit a memorandum “of factual particulars, reasons and citations of authority relied upon in support of legal and equitable principles relevant to the compensation claimed.” Believing they had already submitted everything called for by the March 13, 1984 order and perceiving the order as heralding further delay in the resolution of their fee petitions, some of which had been outstanding for years, petitioners filed the present petition for mandamus.
 

 Petitioners ask this court to settle the question of their entitlement to compensation and then to direct that their fee petitions be reassigned to a different judge. Respondent has agreed that the mandamus petition might usefully be employed as a vehicle for resolving the legal issue of fee entitlement. The trustees would also like to have this question decided. In view of the requests of all parties, because of the lengthy delay already experienced, and to speed the ultimate resolution of the fee petitions, we rule on the legal issue. In a later part of the opinion we also rule on the request that the fee petitions be reassigned to another judge.
 

 A.
 
 Petitioners’ Entitlement to Fees.
 

 From what has been presented, we conclude that petitioners should receive appropriate fees for the services they rendered.
 

 To decide this matter, we do not have to go so far as to determine the broad question of whether a bankruptcy court may validate nunc pro tunc the appointment of special counsel who have performed services for the debtor without pri- or authorization
 
 of any type
 
 from the court.
 
 In re Triangle Chemicals, Inc.,
 
 697 F.2d 1280 (5th Cir.1983). Petitioners were hired pursuant to preexisting orders of court authorizing the hiring of special counsel in the manner adopted. While in some limited instances, the master, at least, felt that the employment may have been beyond the scope of the orders, the trustees, in our view, acted within a reasonable reading of the orders. The orders did not completely comply with the applicable general order or rule, but it is not suggested that the prior reorganization judge and the trustees did not act in good faith. They apparently believed that because of the many legal matters in which the railroad was regularly involved, and the normal turnover in attorneys, that it was not necessary to file separate applications seeking confirmation of each appointment every time, for example, a tort action was filed. The trustees apparently drew a distinction between counsel hired for legal work pecu
 
 *119
 
 liar to a reorganization and counsel hired for legal work of a type which any railroad, whether or not in reorganization, might carry on in the normal course of business. They concluded General Order 44 was aimed at the former. That the trustees (and original reorganization judge) may have erred in their interpretation of the law (a question we need not pursue here) does not negate the fact that, in hiring petitioners, the trustees were acting in reasonable reliance on a court order. It also does not negate the fact that petitioners accepted employment in good faith pursuant to the court’s order.
 

 Courts, including this one, have taken a strong stand against paying legal fees to counsel whose appointment was not properly authorized. In allowing fees on these facts we in no way mean to suggest any retreat from the requirement both that the rule be carefully observed and that fees normally be denied absent proper advance authorization. We hold only that in these exceptional circumstances where counsel were hired by the trustees pursuant to preexisting court orders issued in good faith, and where there was room for legitimate confusion as to what type of order might be acceptable and what the exact scope of that order might be, and where" counsel were hired to work not on reorganization matters but on legal matters arising in the course of the firm’s business, counsel should not be denied payment for services of value to the estate. We observe that payment of these fees appears to have been anticipated, and a reservation of funds made at the time the final plan of reorganization was negotiated and approved. No one opposed the trustees’ application to confirm counsels’ appointment. In fact, major creditors urged that the appointments be confirmed. There was no suggestion that counsels’ appointments would have been disapproved by the court had prior court approval of each appointment been individually sought. According to the master’s report relative to certain petitioners, substantial and valuable services were conferred. What was done, insofar as appears, was necessary to the survival of the railroad and contributed to its rehabilitation, to the advantage of all creditors.
 

 Thus we hold that in these special circumstances, particularly given the trustees’ reasonable reliance on the court orders for authority to employ petitioners,
 
 [4]
 
 their appointments should be confirmed, to be effective as of the date work was assigned to them.
 
 [5]
 
 This means that petitioners will be placed in the status they would have occupied had prior court orders been entered which complied strictly with the rule.
 

 Our ruling does not reach the question of the amounts of petitioners’ fees. These should be determined in the usual manner. Given the lapse of time, however, they should be determined expeditiously. Respondent may, if he wishes, refer such matters to a master. To avoid any question as to what we mean by “expeditiously”, we direct that petitioners’ fee petitions be finally resolved within four months from the date of this opinion.
 

 B.
 
 Reassignment to Another Judge.
 

 Petitioners have asked that the fee petitions be reassigned to a different judge. Respondent and the trustees have opposed this request. We do not know the position of other attorneys, not parties to this mandamus proceeding, who may also be seeking attorneys’ fees. At this point, we are not convinced reassignment would be in the interest of the efficient winding up of the estate, and we do not order it. Respondent’s familiarity through many years' involvement in the reorganization proceeding
 
 *120
 
 would be sacrificed were the fee petitions reassigned. Assignment of petitioners’ fee petitions to a different judge while other fee petitions remained with respondent conceivably could result in disparate treatment and conflicting results were the fund reserved for administration expenses to be inadequate. Moreover, the reorganization proceedings are nearly complete; and, unless there are major issues not revealed in the proceedings descriptions that we have before us, we should expect to see that termination occur in the near future. We believe it unwise to erect any procedural obstacle to a final and speedy termination.
 

 Petitioners suggest respondent took an aggressive adversarial position in his response to the mandamus petition which may make it difficult for him “to rid himself of his prior conclusions,”
 
 O’Shea v. United States,
 
 491 F.2d 774, 779 (1st Cir.1974), and to deal objectively with their fee petitions. We are not convinced that this is so. The mandamus response reflects the legal views expressed in the February 17, 1984 memorandum. In the circumstances presented here, we do not think the expression of legal views necessitates reassignment. The reorganization court was confronted with a troublesome point on which any court might legitimately have entertained some concern.
 
 [6]
 
 Now that we have made our ruling — namely, that, on the information presented to us, petitioners’ appointments should be confirmed — we are confident respondent will deal fairly and expeditiously with petitioners’ fee petitions.
 
 Cf,
 
 e.g.,
 
 Halliday v. United States,
 
 380 F.2d 270, 272-73 (1st Cir.1967) (reassignment is especially desired “when the court is reweighing factual inferences and credibility,
 
 as distinguished from applying rulings on issues of law
 
 ”) (emphasis added),
 
 aff'd on other grounds,
 
 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).
 

 Our views having been expressed, there is no need for formal issuance of a writ of mandamus.
 
 In re United States,
 
 348 F.2d 624, 626 (1st Cir.1965). Consequently, the petition for a writ of mandamus is denied without prejudice to reapplication should the fee petitions not be materially resolved within the time ordered.
 

 So ordered.
 

 APPENDIX
 

 [[Image here]]
 

 
 *121
 
 [[Image here]]
 

 
 *122
 
 [[Image here]]
 

 3. Petitioners have appointed, subject to the approval of this Court, as Special Counsel for these purposes the attorneys and/or firms listed in Paragraph Two.
 

 4. Petitioners believe that said counsel are eminently qualified to perform such services for your Petitioners due to counsel’s experience and their background in this field, as well as their past association with the Debtor. Petitioners further believe that the best interests of the present estate of the Debtor will be served by continuity of counsel in the matters involved in the proposed appointments.
 

 5. It is proposed that said counsel be compensated for their services in the preparation, trial and/or settlement of such cases in accordance with the general standard of compensation to attorneys for like services in the area in which they will perform such services, subject to the approval of this Court.
 

 6. To the best of Petitioners’ knowledge, based on special review of the facts and representations of said attorneys, Petitioners are satisfied that said attorneys represent no interest adverse to Petitioners or to the Trust Estate in the aforesaid matters upon which said special counsel are to be engaged; and
 

 7. In the event of the employment of said Counsel as proposed herein, the services to be rendered to the Trustees by said Special Counsel represents services that would have been required absent reorganization. Said services will not be rendered in or in connection with the present proceeding for the reorganization of the Debtor or any plan for the reorganization of the Debtor in such proceeding. Under these circumstances, Petitioners are informed by counsel, and they therefore allege that any payments to be made to said Special Counsel for their services as proposed herein will be such to the approval of this Court without necessity for the fixing of any maximum limits by the I. C. C. pursuant to Section 77 of the Bankruptcy Act.
 

 WHEREFORE, Petitioners pray that orders be entered herein:
 

 1. Approving the appointment by Petitioners of those attorneys and/ or firms listed in Paragraph Two as Special Counsel for the purposes set within Paragraph One hereof; and
 

 2. Authorizing Petitioners to compensate said Special Counsel for their services, and to reimburse said Special Counsel for their expenses in connection therewith, from the Debtor’s Estate in such amounts as may be approved hereafter by the Court as reasonable.
 

 Robert W. Meserve, Paul W. Cher-ington, and Charles W. Bartlett as
 

 
 *123
 
 [[Image here]]
 

 
 *124
 
 [[Image here]]
 

 
 *125
 
 [[Image here]]
 

 
 *126
 
 [[Image here]]
 

 
 *127
 
 [[Image here]]
 

 
 *128
 
 [[Image here]]
 

 
 *129
 
 2. -The Trustees have successfully negotiated with most of said labor organizations and, pursuant to authorization from this Court, have recently implemented wage increases for certain of their employees.
 

 3. The Trustees have also been negotiating with the United Transportation Union, which represents about 650 employees of the Debtor, relative to wage increases, fringe benefits and so-called work rules but have been unable to reach agreement. Various disputes or controversies are at issue between the parties, the resolution of which will have a major bearing on the Debtor and its future operations. These include, inter alia:
 

 (a) The amounts of wage increases to be effective from January 1, 1978;
 

 (b) Vacation, holiday and expense allowance benefits; and
 

 (c) Consist of, or number of individuals on, train crews.
 

 4. The Railway Labor Act provides that where a railroad and a labor organization are unable to resolve certain controversies an arbitration of such controversies may be agreed to. See: 45 U.S.C. §§ 157, 158 and 159. Such arbitration award would be binding upon the parties.
 

 5. The Trustees, subject to the approval of this Court, propose to enter into an agreement with the United Transportation Union to resolve the present disputes with the said labor organization under the provisions of the Railway Labor Act. The Trustees are of the belief that such proceedings will be the most expeditious resolution of the said disputes. A copy of the proposed agreement is attached hereto and identified as “Exhibit A”.
 

 6. The Trustees propose to retain Ralph Moore, Esquire, of the Washington, D. C., law firm of Shea and Gardner as counsel to represent their interests in the said arbitration proceedings. Mr. Moore is experienced in railroad labor matters and arbitrations and will be compensated at the rate of $120. per hour for his services and $60. per hour for those of his associates.
 

 7. The Trustees are of the opinion that arbitration proceedings with the United Transportation Union and the retention of counsel to represent their interests would be in the best interests of the estate of the Debtor and its ultimate reorganization.
 

 THEREFORE Petitioners pray that an order be entered herein:
 

 1. Authorizing the Trustees to enter into the Agreement with the United Transportation Union providing for binding arbitration as set forth in said Exhibit A.
 

 2. Authorizing the Trustees to retain Ralph Moore, Esquire, of the firm of Shea and Gardner to represent the Trustees’ interests in said arbitration proceedings with the United Transportation Union.
 

 
 *130
 
 [[Image here]]
 

 [1]
 

 . The B & M reorganization proceedings commenced in 1970. A final plan of reorganization became effective on June 30, 1983. The proceedings are governed by section 77, Chapter VIII of the Bankruptcy Act. The railroad is now once again in private hands, the reorganization having been successful. The legal services for which petitioners seek compensation were mostly done in 1980 or earlier years, although some of the work was in 1981 and was ongoing in 1982.
 

 [2]
 

 . One estimate is that 97 actions, on average, are filed annually against the B & M. Many of these are personal injury and FELA claims. There have also been numerous eminent domain proceedings, involving takings of the railroad's extensive land holdings including two lines in New Hampshire; tax proceedings; and extensive labor matters, including a critical labor arbitration.
 

 [3]
 

 . In the case of petitioner Moore reliance is also placed on Order No. 522. See Appendix.
 

 [4]
 

 . Even in an area as strictly construed as the timeliness of a notice of appeal, courts have excused technical violations where counsel acted in reasonable reliance upon a judge’s erroneous statement.
 
 Textor v. Board of Regents,
 
 711 F.2d 1387 (7th Cir.1983).
 

 [5]
 

 . In so saying we reiterate that we are not to be understood as ruling whether or not retroactive authorization could be appropriate in a more conventional bankruptcy setting, or in the absence of prior judicial authorization such as existed here.
 

 [6]
 

 . In
 
 In re J.M. Wells, Inc.,
 
 575 F.2d 329, 331-32 n. 2 (1st Cir.1978), we cited
 
 Beecher v. Leavenworth State Bank,
 
 184 F.2d 498, 501 (9th Cir.1950) (denying compensation for legal services rendered prior to compliance with General Order 44) and, in the context of a receiver (and, later, trustee) who had employed himself as attorney, expressed disapproval that compensation for services rendered prior to court approval of the receiver/trustee’s appointment as attorney were sought and possibly allowed. The facts of these cases seem to us quite distinguishable, but we nonetheless appreciate the court’s concern about any apparent departure from the strict rules that prevail in this area.