## In re NORTHWEST ENGINEERING COMPANY, Debtor.

**Bankruptcy No. 83–01172.**

United States Bankruptcy Court, E.D. Wisconsin.

Oct. 15, 1984.

R. Arthur Ludwig, Milwaukee, Wis., for debtor.

John W. Valletz, Green Bay, Wis., for claimants.

### DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

The issue before the court involves the claims of certain employees for vacation and severance pay and the debtor's objections thereto. The debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on April 1, 1983. Within a day or two, all employees were paid in full for those wages earned prior to April 1, 1983 which were entitled to priority under § 507(a)(3) of the Code.

A number of employees continued to work for the debtor-in-possession after April 1, 1983 and until December 12, 1983, when their services were terminated. Each was paid for his or her services to and including December 12, 1983, for additional days representing accrued vacation time earned in calendar year 1982, and for some additional days required by the provisions of the federal Fair Labor Standards Act. In no case did these additional days extend an employee's employment or entitlement to pay into calendar year 1984, and with one exception, none of these employees in the so-called "December layoffs" performed any work for the debtor-in-possession in 1984.

Some of the employees included in the December layoffs have filed claims for vacation pay and severance pay and assert for them a § 503(b) priority as chapter 11 administrative expenses. The debtor has stipulated to the dollar amounts as being mathematically correct but objects to the priority status claimed for them. Some employees included in the December layoffs have not filed claims. Although the court has entered a bar order requiring that all claims be filed on or before August 10, 1984, the debtor has indicated that it intends to honor the court's ruling on severance pay and vacation pay as it will relate to all employees laid off on December 12, 1983, including those who have not filed a claim.

The debtor had a "Vacation Policy" and a "Severance Pay Policy" for salaried employees, which were set out in a manual in the possession of the debtor's personnel director. Copies of the company policy regarding vacation pay were distributed once a year with pay checks. The policy on severance pay was not formally distributed, but copies did get out into public.

On April 16, 1984, the debtor filed a motion to reject as an executory contract the unpublished severance pay policy. The employees objected to that motion on the ground that their services had already been terminated and there was no executory contract in existence, at least so far as they were concerned, which could be rejected. The court reserved a ruling on that question until hearing on the debtor's objections to the claims. With the exception of its possible effect on compensation for post-petition services, the court was and is of the view that it is a moot point. *Matter of Health Maintenance Foundation*, 680 F.2d 619, 622 (9th Cir.1982).

### The Vacation Pay Claims

At the hearing on objections to claims, the debtor's personnel director testified that in order to be eligible for vacation pay, it was necessary that the employee work at least one day in the following calendar year. The company's written policy on vacation pay (Ex. 1) supports his testimony and there was no testimony to the contrary. Exhibit 3, which was offered by the claimants and like Exhibit 1 is entitled "SALARIED EMPLOYEES' VACATION POLICY," although differing in some respects, does not contradict the debtor's position on this requirement. It states:

"Vacation is determined on *the first work day of the vacation year.* To be eligible for *vacation pay* in the vacation year, an employee must actively work in the vacation year unless off all year due to:" (injury, illness, nonoccupational accident or illness, military service)

The vacation pay claims here in issue are for vacation time earned during 1983, and inasmuch as none of the claimants worked in 1984, their claims for vacation pay must be disallowed. (One claimant, Jerome Schleis, was called back to work during 1984 and he was accordingly paid for vacation time that he earned in 1983.)

### The Severance Pay Claims

As pointed out in *Matter of Health Maintenance Foundation*, 680 F.2d 619 (9th Cir., 1982), there are two general types of severance pay: pay at termination in lieu of notice, and pay at termination based on length of employment. The debtor's policy regarding severance pay was based on length of employment.

Claimants assert that the severance pay which they earned for both pre- and post-petition services should be paid to them in full as a chapter 11 administrative expense. The debtor argues contrariwise that it is a pre-petition expense, and that only that portion which was earned in the 90 days prior to the filing of the chapter 11 petition on April 1, 1983 should be allowed as a priority claim under § 507(a)(3) of the Code, with the balance being treated as a general pre-petition claim.

This issue is not new. In the case of *Straus-Duparquet, Inc. v. Local U. No. 3 Int. Bro. of Elec. Wkrs.*, 386 F.2d 649 (2d Cir., 1967), the court held that severance pay based on length of employment is entitled to priority payment as a cost of administration. Other courts have not followed the Second Circuit. The First, Third and Ninth Circuits hold that such severance pay is not entitled to priority as a cost of administration. *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir., 1976); *In re Public Ledger*, 161 F.2d 762 (3d Cir.1947); *Matter of Health Maintenance Foundation*, 680 F.2d 619 (9th Cir., 1982). The latter cases emphasize that first priority should be afforded only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business. A claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing. *In re Mammoth Mart, Inc., supra*, 536 F.2d at 954.

Although our own Court of Appeals has not ruled directly on this issue with respect to severance pay, it did address the question of administrative priority in the recent case of *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir., 1984). Citing the *Mammoth Mart* case with approval, the court held that "inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of furnishing of goods or services to the debtor." *Matter of Jartran, Inc., supra*, 732 F.2d at 587. The *Jartran* decision, which this court is bound to follow, makes it clear that severance pay for services performed prior to the filing of the chapter 11 petition must be treated as a pre-petition claim, with that portion earned during the 90 days immediately prior to the filing being entitled to priority status under § 507(a)(3).

The services performed by the claimants after April 1, 1983 call for different treatment. They were performed for and at the request of the debtor-in-possession and they were performed at a time when the severance pay policy was still in effect. The debtor-in-possession did not notify these employees on April 1, 1983, when its chapter 11 petition was filed, that it was terminating its policy with respect to severance pay. The April 16, 1984 motion to reject the severance pay policy would be notice to employees then serving that the policy was no longer in effect, but this would not affect the rights of these claimants whose services to the debtor-in-possession were performed during the previous year under the assumption that they were qualifying for severance pay.

This decision stands as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.