**In re William Dudley EWING, Jr., Debtor.**

**Albert M. CARLSON, Appellant,**

v.

**BURNS NATIONAL BANK OF DURANGO, Norwest Business Credit, Inc., Creditors/Appellees**

**and**

**William D. Ewing, Jr., Debtor/Appellee.**

Civ. A. Nos. 85–K–1218, 85–K–1896. Bankruptcy No. 84–B–2134 M.

United States District Court, D. Colorado.

Nov. 22, 1985.

Theodore M. Smith, Inman, Erickson & Flynn, Denver, Colo., for Carlson.

Michael A. Berniger, Esq., Berniger, Berg, Sterling, Rioth & Diver, Colorado Springs, Colo., for Burns Nat. Bank.

Thomas J. Moore, Denver, Colo., for Norwest Business Credit.

Nancy D. Miller, Sterling & Miller, Denver, Colo., for Ewing.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Albert M. Carlson appeals two orders from the bankruptcy court. For the following reasons, I affirm the bankruptcy court's order of January 2, 1985. I reverse the bankruptcy court's order of July 5, 1985, and remand for a ruling on the merits.

## BACKGROUND

Debtor, William Dudley Ewing, Jr., filed a voluntary Chapter 11 petition for bankruptcy on May 4, 1984. On September 7, 1984 Ewing signed a contract naming Carlson as the exclusive broker for the sale of certain real property in Durango. The contract provided that "[a]ny sale of the property is expressly subject to the United States Bankruptcy Court for the District of Colorado in Bankruptcy's approval."

On September 14, 1984, Ewing moved for an order authorizing the appointment of Carlson as Ewing's exclusive real estate broker. Ewing's attorneys sent a notice of the motion to Ewing's creditors. The notice stated that if no party requested a hearing, the court would act on the motion on October 4, 1984. On September 20, 1984, the bankruptcy court signed an order granting the motion. Ewing's attorneys sent a copy of the order to Carlson on October 1, 1984. On October 29, 1984, the order was vacated and set aside as inadvertently entered.

Ewing then moved for an order approving the appointment of Carlson as the exclusive real estate broker for the Durango property. On November 13, 1984, the bankruptcy court denied the motion.

Carlson then requested the bankruptcy court to reconsider the November 13 order. In the alternative, Carlson requested the court to appoint him broker nunc pro tunc [1] so that he could be reimbursed for time and money spent trying to sell the property in reasonable reliance on the September 20 order. On January 2, 1985, the court denied Carlson's motion to reconsider the November 13 order stating that Carlson had no standing to come before the court since he was not a party to the proceeding. The court also declined to appoint Carlson broker nunc pro tunc stating that Carlson knew he was not authorized to do work before September 20 and Ewing's attorneys should have known that the September 20 order was an administrative mistake. Carlson then appealed the January 2 order to the District Court.

On January 2, 1985, the bankruptcy court heard bids for the Durango property. On the following day, the court signed an order accepting a bid for 2.6 million dollars. Carlson did not produce the successful bidder.

In March of 1985, Carlson requested that his claims for commissions or expenses in the amount of $156,000.00 be paid as an administrative expense pursuant to 11 U.S.C. § 503. *See infra.* On July 5, 1985, the bankruptcy court denied Carlson's request stating that it did not have jurisdiction to appoint Carlson broker nunc pro

---

1. The term "nunc pro tunc" is "a phrase applied to acts done after the time when they should be done, with a retroactive effect, *i.e.,* with the same effect as if regularly done." *In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1285 (5th Cir. 1983) (quoting 2 *Collier on Bankruptcy* § 327.92, at 327-5 through 7 (15th ed. 1982)).

tunc because the issue was on appeal in the District Court. Carlson subsequently appealed the July 5 order to the District Court. Carlson's appeal of the July 5 order and his appeal of the January 2 order were consolidated in this court on August 13, 1985.

Three questions are raised on appeal. First, did Carlson lack standing on his motion for reconsideration because he was not a party to the proceeding? Second, did the bankruptcy court abuse its discretion when it declined to appoint Carlson broker nunc pro tunc on January 2, 1985? Third, did the bankruptcy court lack jurisdiction to pay Carlson an administrative expense on July 5, 1985?

### (1) Standing On The Motion For Reconsideration

A bankruptcy court's power to reconsider orders is governed by Bankruptcy Rule 9024 which provides that Rule 60 of the Federal Rules of Civil Procedure applies. Rule 60(b) allows a court to relieve "a party or his legal representative from a final judgment, order, or proceeding." One who is not a party lacks standing to make a Rule 60(b) motion unless "by operation of law [he] is tantamount to a party in relationship to the matter involved in the principal action." *Western Steel Erection Co. v. United States*, 424 F.2d 737, 739 (10th Cir.1970) (attorney may not use Rule 60(b) as a vehicle to resolve his private controversy with a party over his fee); *see e.g., Screven v. United States*, 207 F.2d 740, 741 (5th Cir.1953) (alleged realty owners did not have standing to set aside judgment in original condemnation proceeding because they were not parties to such proceeding); *United States v. West Willo Apartments, Inc.*, 245 F.Supp. 755, 757 (E.D.Mich.1965) (purchaser at a mortgage

foreclosure sale lacked standing to move to reopen the foreclosure decree to seek removal of the period of redemption). *But cf. In re Casco Chemical Co.*, 335 F.2d 645, 651 (5th Cir.1964) (trustee in bankruptcy had standing to bring action to set aside judgment in interpleader action ordering distribution of fund allegedly owed to bankrupt).

■ In this case, Ewing was a debtor in possession in a Chapter 11 case. Pursuant to 11 U.S.C. §§ 1107(a)[2] and 327(a),[3] he had the duties, rights and powers of a trustee, including the power to employ professional persons. Carlson, on the other hand, did not have such duties, rights, or powers. Therefore, he was not "tantamount" to Ewing in Ewing's motion for an order approving the appointment of Carlson as the exclusive real estate broker. Accordingly, I hold that Carlson did not have standing on his motion for reconsideration of the November 13 order.

### (2) Broker Nunc Pro Tunc

■ It is generally recognized that compensation or administrative expenses cannot be granted from the debtor's estate for professional services unless the Court has authorized both the employment and the services prior to performance of the services. *In re Carolina Sales Corp.*, 45 B.R. 750, 752 (Bankr.E.D.N.C.1985); *In re Pathway, Inc.*, 41 B.R. 400, 401 (Bankr.D.Hawaii 1984). "Otherwise, the person rendering the services may be an officious intermeddler or a gratuitous volunteer." *In re Carolina Sales Corp.*, 45 B.R. at 752 (quoting 2 *Collier on Bankruptcy* ¶ 327.-02, at 327–6 (15th ed. 1985).

■ Under certain circumstances, however, the bankruptcy court has discretion within its equity powers to enter an order

---

**2.** 11 U.S.C. § 1107 provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, ... and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under this chapter.

**3.** 11 U.S.C. § 327(a) provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more ... professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

nunc pro tunc authorizing the employment of a professional for the debtor. *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir.1983); *In re Laurent Watch Co.*, 539 F.2d 1231, 1232 (9th Cir.1976); *In re Simasko Production Co.*, 47 B.R. 444, 446 (Bankr.D.Colo.1985); *In re Spencer*, 48 B.R. 168, 171 (Bankr.E.D.N.C.1985). Such an order, however, should only be entered in the most extraordinary circumstances. *In re Triangle Chemicals, Inc.*, 697 F.2d at 1289; *In re Certain Special Counsel to Boston & Maine Corp.*, 737 F.2d 115, 119 (1st Cir.1984); *In re Pathway, Inc.*, 41 B.R. at 401.

For example, in *In re Sergio, Inc.*, 39 B.R. 522 (Bankr.D.Hawaii 1984), the court awarded a real estate broker a three percent commission, even though the broker did not produce the purchaser. The reasons the court awarded the commission were: (1) the court had already entered an order approving retention of the broker; (2) the broker expended considerable time and effort in marketing the property; and (3) he assisted in the sale to the buyer. *Id.* at 524–25. Another example is *In re Certain Special Counsel To Boston & Maine Corp.*, 737 F.2d 115. In that case, the First Circuit confirmed the appointment of attorneys who were hired by trustees because special circumstances existed, including the fact that the trustees were acting in reasonable reliance on a court order. *Id.* at 119.

On the other hand, in *In re Pathway, Inc.*, 41 B.R. 400, the bankruptcy court declined to authorize a nunc pro tunc nonexclusive listing contract with a real estate broker for the sale of the major asset of the debtor's estate because a sale on an offer not produced by the broker had already been confirmed. *Id.* at 401. Similarly, in *In re Cummins*, 8 B.R. 701 (Bankr.C.D.Cal.1981), *rev'd on other grounds*, 15 B.R. 893 (Bankr.App. 9th Cir.1981), the bankruptcy court held that a broker could not recover a real estate commission. The court indicated that it might have been able to grant equitable relief if the property had been sold to a buyer produced as a result of the efforts of the broker. *Id.* at 702–03.

In this case, extraordinary circumstances did not exist on Januuary 2, 1985. The notice sent by Ewing's attorneys to Ewing's creditors informing them of Ewing's motion for an order authorizing the appointment of Carlson as the exclusive real estate broker clearly stated that the earliest the judge could authorize Carlson's appointment was October 4, 1984. Therefore, Ewing's attorneys should have known that the order was an administrative mistake. In addition, Carlson knew that Ewing was in Chapter 11 when Carlson entered into the contract. Therefore, Carlson should have known that he was not authorized by court order to incur expenses or do work before September 20, 1985. Although Carlson may not have known that he was not authorized to incur expenses or do work after September 20, 1985, a decision should not be based on hardship to him. *In re Pathway, Inc.*, 4 B.R. at 401. Moreover, the evidence did not indicate that Carlson's efforts benefited the estate as of January 2, 1985. Accordingly, I hold that the bankruptcy court clearly did not abuse its discretion when it declined to appoint Carlson broker nunc pro tunc on January 2, 1985.

### (3) 11 U.S.C. § 503

11 U.S.C. § 503 provides:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; ...

"Entity" includes person, estate, trust, and governmental unit. 11 U.S.C. § 101(14).

The First Circuit in *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976) established a test for determining whether a claim is entitled to first priority:

[1] [T]he debt must arise from a transaction with the debtor-in-posession. [2]

When the claim is based upon a contract between the debtor and the claimant, ... a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business. [3] When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, ... their claims [must] be afforded priority.

*Id.* at 954 (The court was construing the predecessor of § 503, § 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1) (1976). *See also In re Jartran*, 732 F.2d 584, 589–90 (7th Cir.1984); *In re Baldwin-United Corp.*, 43 B.R. 443, 451–56 (Bankr. S.D.Ohio 1984); *In re Northwest Engineering Co.*, 43 B.R. 603, 604–05 (Bankr.E. D.Wis.1984).

Carlson contends that he is entitled to payment of an administrative expense in the amount of $156,000.00 for several reasons, including the following: (1) the debt arose from a contract with Ewing; (2) as a result of Carlson's efforts, the property sold at a court-conducted auction for 2.6 million dollars, or $750,000.00 more than the successful bidder's original bid; and (3) Ewing and his attorneys induced Carlson to perform services pursuant to the contract.

■ The issue of whether Carlson is entitled to payment of an administrative expense pursuant to 11 U.S.C. § 503 was not raised or adjudicated when the bankruptcy court entered its order of January 2, 1985. Therefore, on July 5, 1985, the issue was not on appeal, and the bankruptcy court had jurisdiction. Accordingly, this case is remanded to the bankruptcy court for determination of whether Carlson is entitled to payment of an administrative expense pursuant to 11 U.S.C. § 503. If the court determines that Carlson is entitled to payment of an administrative expense, it does not need to appoint him broker nunc pro tunc. It only needs to pay him pursuant to 11 U.S.C. § 503.

IT IS THEREFORE ORDERED THAT:

(1) The bankruptcy court's order of January 2, 1985 is affirmed.

(2) The bankruptcy court's order of July 5, 1985 is reversed and remanded.