**In re DAZIC CONTROLS CORPORATION,**
Debtor.

**Bankruptcy No. 2–94–01389.**

United States Bankruptcy Court,
D. Connecticut.

Feb. 17, 1995.

---

Alan Robert Baker and Dominic Fulco III, Baker & Fulco, Putnam Park, Wethersfield, CT, for Winterburn Mfg. Co. and Robert W. Randall.

Joel M. Grafstein, Grafstein & Associates, Farmington, CT, for debtor.

Byron Paul Yost, Yost & Associates, New Haven, CT, for Unsecured Creditors' Committee.

James C. Graham and Marc S. Edrich, Pepe & Hazard, Hartford, CT, for John M. Morgan and Henry D. Tiffany III.

*MEMORANDUM OF DECISION ON MOTIONS FOR (1) REHEARING ON SECURED CREDITORS' OBJECTION TO DEBTOR'S AMENDMENT TO SCHEDULE F OR, ALTERNATIVELY, MOTION TO STRIKE AMENDMENT TO SCHEDULES AND (2) ALLOWANCE OF CLAIMS OF HENRY D. TIFFANY III AND JOHN M. MORGAN AS INFORMAL PROOFS OF CLAIM, AND FOR AUTHORIZATION OF AMENDMENT BY FORMAL PROOF OF CLAIM*

ROBERT L. KRECHEVSKY, Chief Judge:

## I.

### ISSUES

Before the court are the above-identified motions filed by two alleged creditors, John

M. Morgan (Morgan) and Henry D. Tiffany III (Tiffany) (jointly, "the claimants"), in which they seek, in effect, to have their claims against the debtor's estate recognized as timely filed or properly listed. The claimants filed their motions during a confirmation hearing on a reorganization plan submitted by Robert W. Randall (Randall) and The Winterburn Manufacturing Company (Winterburn) (jointly, "the plan proponents"). The plan proponents oppose the motions. The plan proponents contend that with regard to the first motion, the claimants do not have standing to seek a rehearing, or, if they do, the court's ruling striking the amendment was appropriate in light of the debtor's bad faith and the resulting prejudice to creditors. The plan proponents oppose the second motion, denying the existence of an "informal" proof of claim filed by either of these creditors.

## II.

### BACKGROUND

On January 8, 1993, Metering and Controls, Inc., a Connecticut corporation, purchased the assets of Dazic Controls Corporation, a business whose stock was wholly owned by Winterburn. Randall owned all the stock of Winterburn. Following the asset sale, Metering and Controls changed its name to Dazic Controls Corporation (the debtor). The payments due under the terms of the sale totaled $3,196,800, including various employment and noncompetition agreements with Randall and other license and lease agreements with Winterburn. At the sale closing, the debtor paid the seller $750,000 in cash and delivered a one-year, $500,000 note secured by the debtor's assets.

Morgan and Patricia Morgan, his wife, each own 50 of the 100 issued shares of the debtor's corporate stock. The Morgans and Tiffany agree that Tiffany has had the right since the sale closing date to have Patricia Morgan transfer her shares of stock to Tiffany upon request, although such request has, to date, not been made.

The debtor failed to pay the $500,000 note when it became due on December 31, 1993, and Winterburn, to whom the note and its accompanying security agreement had been assigned, commenced a state-court action to foreclose the security interest on March 25, 1994. The debtor filed for relief under Chapter 11 on April 18, 1994 with Morgan executing the petition and accompanying schedules as the debtor's president. The schedules listed total assets of $898,072.66 and total liabilities of $1,652,273.47.

The schedules of creditors did not list a debt to either Tiffany or Morgan. The court set August 9, 1994 as the bar date for the filing of claims by creditors, and neither claimant filed a formal proof of claim by that date.

The debtor, on July 20, 1994, filed a plan and a disclosure statement, executed by Morgan on the debtor's behalf, which contained a "Class VII" for "the stockholder's loan from Henry Tiffany to the Debtor in the amount of $250,000." The disclosure statement asserted "Mr. Tiffany borrowed this sum from his parents and friends joining together as Sterling, Ltd. and has been repaying the loan on a monthly basis with payments of interest from January 1993 until March 1994." The disclosure statement also described a "Class VIII" as "the stockholder's loan from John Morgan to the Debtor in the amount of $500,000. Mr. Morgan borrowed this sum from his father and has been repaying the loan on a monthly basis with payments of interest from January 1993 until March 1994. These payments have been made to Smith, Barney, Shearson." The plan provided that Classes VII and VIII be paid interest only on the stockholder loans for the first five years and, thereafter, be repaid over 30 years.

The plan proponents filed a plan and a disclosure statement on August 5, 1994. This plan contained a "Class 3" which provided: "Class 3 consists of all allowed Insider Claims, if any. Claims in Class 3, if allowed, would include Claims asserted by or for the benefit of J. Morgan, P. Morgan and Tiffany, including any Claims of Smith, Barney Shearson or Sterling, Ltd., but will not include any Allowed Administrative Expense claims or Allowed Priority Claims held by such Insiders." The prospects for Class 3 creditors to receive anything under the plan are remote. The plan also provides that if

the court sustains the insider creditors' objection to this classification, the plan proponents will seek subordination of such claims under Code § 510(c). The plan proponents' plan provided for 100 percent payment to the class comprising the debtor's trade creditors. The court approved the plan proponents' disclosure statement on September 9, 1994 and established October 13, 1994 for the hearing on plan confirmation.

The debtor, on September 30, 1994, filed an amendment to Schedule F of its petition with the clerk of the court to add Tiffany and Morgan as creditors. The amendment described the basis of Tiffany's claim as "Loan of money made to Debtor in January 1993 evidenced by promissory note" in the "undisputed" amount of $250,000, and the basis for Morgan's claim as "Loan of money made to Debtor in January 1993 evidenced by promissory note" in the "undisputed" amount of $500,000. The plan proponents first learned of the amendment on October 10, 1994 and immediately filed an objection to and motion to strike the amendment. This motion was heard on October 13, 1994, the date set for the commencement of the plan confirmation hearing. The court granted the plan proponents' motion, concluding that the debtor's amendment to Schedule F of the petition was improper, untimely and prejudicial.

The claimants, on October 24, 1994, filed a motion to reconsider the court's order. On October 28, 1994, they filed a motion to allow their claims on the basis of an alleged informal filing made on or prior to the claims bar date of August 9, 1994.

The record made during the hearings on these motions is confusing both as to the creation of the claimed debts and, if the debts do exist, as to who the creditors are. The debtor's corporate minutes, which set forth a detailed account of corporate actions, contain no reference whatsoever to the debtor borrowing $750,000, to be utilized at the January 8, 1993 sale closing. The debtor issued no evidences of indebtedness to anyone on or about that date. The debtor's financial records show that following the asset purchase the debtor sent monthly checks to Smith, Barney and Shearson (SBS) and to Sterling Ltd. When the debtor's accoun-tants started an audit of the debtor's books for the first year of operation after the purchase, they apparently advised Morgan that a basis for such payments was required. Morgan and Tiffany then decided to have promissory notes prepared by their respective attorneys to support the interest payments. The note in the amount of $250,000, prepared by Tiffany's attorney and signed by Morgan as the debtor's president, showed the payee to be Sterling Ltd. as trustee, not Tiffany. This note, although prepared and executed in early 1994, was apparently backdated to the time of the asset purchase. A $500,000 demand note prepared by Morgan's attorney and dated December 31, 1993 was executed by Morgan as the debtor's president in late January 1994, and was made payable to Morgan "without interest."

Tiffany testified that Sterling Ltd., as trustee for various friends of Tiffany, loaned Tiffany the $250,000, and he, in turn, loaned the money to the debtor. The court recalls no explanation why the debtor is the obligor on the note payable to Sterling Ltd. In similar vein, Morgan testified that he loaned the $500,000 to the debtor, that he received the $500,000 from his father who, in turn, borrowed the funds from SBS, and that the debtor's payments were, in effect, a short-cut method of making the interest payments to Morgan. Morgan gave no explanation for why the $500,000 note stated it was payable at no interest, other than it was "a mistake." Morgan and Tiffany claimed ignorance until after the bar date that the debtor's schedules did not list their claims and that a bar date for claims had been set.

The debtor's schedules of creditors, which, as noted, did not contain the names of Morgan and Tiffany, did list the names of Smith, Barney and Shearson and Sterling Ltd. and read as follows: "Smith Barney Shearson" with a claim for "Interest Expense" of $4,985.54, which was a "fixed and liquidated" claim; "Sterling Ltd." with a claim for "Interest On Short Term Notes (2)" of $4,066.81, which was a "fixed and liquidated" claim. The debtor's schedules also answered "None" to the question of whether the debtor had made any payments to or for the benefit of creditors who are or were insiders.

Morgan sent a letter, dated January 26, 1994, to the debtor's auditors which commented on the draft audit report and the debtor's financial statement he had received. Morgan stated: "I'm thinking in terms of trading friendly debt to equity...." The draft (and final) financial statement showed under "Other Debt": "Notes payable—officers, $750,000."

## III.

### DISCUSSION

#### A.

#### Motion To Rehear

■ The claimants rely on Fed.R.Bankr.P. 1009(a)[1] as the authority for the debtor to have filed, on September 30, 1994, an amendment to the creditor schedules. They recognize that although the rule appears absolute on its face with regard to the debtor's right to file amendments to schedules, bankruptcy courts, as courts of equity, can reject amendments where there is a showing of the debtor's bad faith or of prejudice to the creditors. See In re Williamson, 804 F.2d 1355, 1358 (5th Cir.1986). They contend that since the plan proponents were aware of such claims as they were referred to both in the debtor's and the plan proponents' plans, there can be no claim of prejudice. They also argue that there "is not a single piece of evidence to demonstrate that Mr. Morgan was acting in bad faith by neglecting to schedule his debt, or the debt of Mr. Tiffany.... Rather, the record indicates an instance of inadvertence and lack of actual knowledge of the bar date in this case." Claimants' Brief at 5.

■ The plan proponents first assert that the claimants lack standing to have the court reconsider its order dated October 13, 1994 granting the motion to strike the amendment filed by the debtor. They cite Carlson v. Burns Nat'l Bank (In re Ewing), 54 B.R. 952 (D.Colo.1985) for the following proposition: "A bankruptcy court's power to reconsider

orders is governed by Bankruptcy Rule 9024 which provides that Rule 60 of the Federal Rules of Civil Procedure applies. Rule 60(b) allows a court to relieve a party or his legal representative from a final judgment, order or proceeding. One who is not a party lacks standing to make a Rule 60(b) motion unless by operation of law he is tantamount to a party in relationship to the matter involved in the principal action." 54 B.R. at 954 (citations and internal quotations omitted).

In the present matter, the plan proponents argue that only the debtor can assert a right to amend schedules as a matter of course, the debtor has not sought a rehearing of the court's order, and that neither Tiffany nor Morgan are "tantamount" to the debtor. The court overrules the objection to standing on the ground that Tiffany and Morgan may be considered as proper parties to the plan proponents' motion to strike the amendment.

■ The court, however, concludes that the claimants have failed to advance new argument or submit additional evidence sufficient to warrant a reversal of the court's original ruling. Tiffany and Morgan, as the officers and sole stockholders of the debtor who caused the debtor to file a Chapter 11 petition, are charged with the knowledge of the August 9, 1994 claims bar date, notwithstanding any assertion of ignorance. Cf. In re Coastal Alaska Lines, Inc., 920 F.2d 1428 (9th Cir.1990) (creditor who did not receive actual notice of claim bar date, but who had actual knowledge of bankruptcy proceedings, charged with knowledge of bar date). They were deposed by the plan proponents in May 1994, prior to the bar date, and questioned about the existence of their claims. The debtor's amendment to list the claimants as creditors came after both the debtor and the plan proponents had filed plans and disclosure statements and after the court had set a hearing on confirmation of the plan proponents' plan. The debtor's amendment unquestionably serves only the interest of the claimants as insiders who had failed to com-

1. Rule 1009. AMENDMENTS OF VOLUNTARY PETITIONS, LISTS, SCHEDULES AND STATEMENTS

(a) *General Right to Amend.* A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby....

ply with the claims' bar date. Fed. R.Bankr.P. 3003(c)(3) authorizes the court in a Chapter 11 case to extend the time for filing proofs of claim "for cause." To permit a debtor to avoid, on behalf of insiders, the "for cause" requirement of Rule 3003(c)(3) by the procedure of the debtor filing an amendment to its schedules is not acceptable. *Cf. In re Union Meeting Partners,* 160 B.R. 757, 775 (Bankr.E.D.Pa.1993) (amendment of Chapter 11 debtor's schedules disallowed on grounds of bad faith and prejudice to creditors, where debtor filed amendment to reclassify general partners' contributions to undisputed debt after creditor filed plan calling for 20 percent dividend to unsecured creditors).

The plan proponents' motion to strike the debtor's September 30, 1994 amendment to schedules, after rehearing, is granted.

### B.

### *The § 501(c) Contention*

The claimants contend the filing of the debtor's plan constitutes the debtor's assertion of their claims and rely upon Code § 501(c). Claimants' Brief at 8. Section 501(c) provides: "If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." The claimants argue that "[s]ignificantly, neither Section 501(c) or the Bankruptcy Rules specify period [sic] for the filing of claims by debtor on behalf of a creditor." Claimants' Brief at 8 (citing *In re Middle Plantation of Williamsburg, Inc.,* 48 B.R. 789, 800 (E.D.Va.1985)). Fed.R.Bankr.P. 3004 was amended in 1987 to provide that if a creditor fails to file a proof of claim, "the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of" the pertinent bar date. The claimants do not assert the debtor filed any proof of claim after the bar date, but apparently rely on this section to permit the debtor's plan to constitute a timely filing. Section 501(c) does not avail the claimants for the reasons discussed in parts A and C of this memorandum.

### C.

### *The "Informal" Proof of Claim*

■ Fed.R.Civ.P. 3001(a) and (b) describe a proof of claim as "a written statement setting forth a creditor's claim" and provides that the proof of claim "shall be executed by the creditor or the creditor's authorized agent." The claimants contend that the doctrine of "informal" proof of claim may be invoked by them, based upon the totality of the circumstances in this proceeding, so that the court may grant their motion for authorization to amend an informal proof of claim by a formal proof of claim.

■ The doctrine of the informal proof of claim has previously been applied in this district, and most recently expressed as follows:

> Both bankruptcy courts in this district have recognized and followed the doctrine that a creditor's filing of a document with the bankruptcy court prior to a bar date which indicates, at a minimum, the basis for a claim and the creditor's intent to hold the estate liable, may constitute an informal proof of claim capable of being later amended by a formal proof of claim.

*In re Veilleux,* 140 B.R. 28, 29 (Bankr. D.Conn.1992) (citations omitted) (motion filed by creditor for relief from stay qualified as informal proof of claim).

The claimants allege they have met this test through the following pre-bar date writings: "The Debtor's plan of reorganization submitted over John Morgan's signature, every U.S. Trustee's report filed in the case, financial statements of record, and the Secured Creditor's own plan.... [and] the May 1994 Rule 2004 examinations of Messrs. Morgan and Tiffany, clearly delimiting the claims and the fact that they were to be paid ... constitute statements of the claimants for purposes of recognizing an informal claim." Claimants' Brief at 13.

The claimants cite *In re Haugen Constr. Servs., Inc.,* 876 F.2d 681 (8th Cir.1989) for the following standard:

> Great liberality in permitting amendments of claims in bankruptcy proceedings is proper, but the statute requiring that a

proof of claim in writing be filed is clear, positive and unambiguous and it must not be nullified in the name of equity. If the record made within the statutory period, *formal or informal,* disclosed facts showing an assertion of a claim against the estate and an intention by the claimant to share in its assets, there would be a basis for the proposed amendment.... A valid informal claim need not be filed with the bankruptcy court.

*Id.* at 682 (citations and quotation marks omitted.) In *Haugen,* the creditor had sent a letter to the U.S. Trustee, as the acting trustee in a Chapter 11 proceeding, asserting its claim and requesting that the letter be passed on to the new trustee. The court concluded that by this letter, the creditor had "sufficiently made an amendable informal claim within the bar period." *Id.* The claimants also rely on *In re Gateway Investments Corp.,* 114 B.R. 784 (Bankr.S.D.Fla.1990) for their contention that a creditor's statements made during a Rule 2004 deposition can be the basis of an informal claim.

The plan proponents respond that *Haugen* nowhere eliminates the requirement that the *creditor* must assert its claim in a writing, and that none of the documents the claimants mentioned in their brief were filed by the claimants. Rather, every document was filed by the debtor or by the plan proponents. *In re Hugh Menefee, Inc.,* 121 B.R. 51, 55 (Bankr.D.Hawai'i 1990) is direct authority for the rule that documents prepared by the debtor's sole shareholder on behalf of the debtor, and filed with the court, do not constitute informal proofs of the shareholder's claims against the debtor.

■ The plan proponents contend that the claimants have misread Gateway. The creditor in *Gateway* had filed a motion for relief from stay, and the court relied on that document as the informal proof of claim and mentioned the deposition testimony as corroborating. The application of the informal proof of claim test in *Gateway* is no different than the statement of the doctrine in *Veilleux,* and requires, therefore, a writing signed by the claimants.

The court finds, after a review of all documents mentioned by the claimants, that they have not satisfied the informal proof of claim requirement that there be a writing by the claimants, as creditors, asserting their claims. The court concludes that none of the authorities on which the claimants rely support their position for the finding of an informal proof of claim, based upon the record in this proceeding. *Cf. In re International Horizons, Inc.,* 751 F.2d 1213, 1217 (1985) ("[M]ere notice of a claim alone is not to be called an informal proof of claim and does not excuse the absence of a proper timely proof as the law requires. An informal claim may be asserted, if it can be at all, only when it is apparent that the creditor intends to seek recovery from the estate and when the informal proof of claim is 'filed' prior to the bar date. The general rule is that a claim arises where the creditor evidences an intent to assert its claim against the debtor. Mere knowledge of the existence of the claim by the debtor, trustee or bankruptcy court is insufficient.") (citation and quotation marks omitted).

## IV.

### CONCLUSION

■ The claimants insist that the plan proponents' knowledge of the statements contained in the debtor's documents, and those heard during depositions of the claimants taken by the plan proponents, should control in a court of equity under a totality of the circumstances doctrine over a rigid application of the rule summarized in *Veilleux.* They argue that if the plan proponents "can subordinate or eliminate the claims of Morgan and/or Tiffany on their merits, and thereby seek to obtain confirmation of their plan more readily, then so be it. But let it be based on substance, not on an inadvertent default." Claimants' Brief at 16.

Even if equitable factors were to be considered, the court does not find that they favor the claimants. The claimants are insiders with complete control of the debtor and charged with knowledge of these plan confirmation proceedings, including the contents of the debtor's schedules and the establishment of the bar date. They were made aware in May, 1994, almost three months before the

bar date, that the debtor's schedules, which were prepared under Morgan's oversight, did not include them as creditors, and they did nothing. Only on the eve of confirmation did they seek to assert their rights as creditors. If, as Morgan testified at the hearings, other persons on whom he relied are responsible for the claimants' defaults, that fact constitutes no basis for the court to ignore established law.

The motion of the claimants for allowance of their claims as informal proofs of claim must be, and hereby is denied. It is

SO ORDERED.